# APPENDIX.

## I.

## GORDON v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

Decided December Term, 1864.

This cause was submitted on the 18th December, 1863. On the 4th of April, 1864, the court ordered it to be argued on the second day of the following December Term. Mr. Chief Justice Taney had prepared an opinion expressing his views upon the question of jurisdiction. This he placed in the hands of the clerk in vacation, to be delivered to the judges on their reassembling in December. Before the judges met he died. The clerk complied with his request. It is the recollection of the surviving members of the court, that this paper was carefully considered by the members of the court in reaching the conclusion reported in 2 Wall. 561; and that it was proposed to make it the basis of the opinion, which, it appears by the report of the case, was to be subsequently prepared. The paper was not restored to the custody of the clerk, nor was the proposed opinion ever prepared. At the suggestion of the surviving members of the court, the reporter made efforts to find the missing paper, and, having succeeded in doing so,* now prints it with their assent. Irrespective of its intrinsic value, it has an interest for the court and the bar, as being the last judicial paper from the pen of

---

* The following account of the paper is furnished by the gentleman from whom the copy was received. "This copy was made by the late David M. Perine, the life-long friend of Chief Justice Taney, and one of his executors. It was kept by Mr. Perine until his death, a couple of years ago, and since then by his only son and executor, from whom I get it. The original we cannot find ; but the copy bears the mark of Mr. Perine as having been ' Ex'd,' and can be relied upon absolutely."

MR. CHIEF JUSTICE TANEY.

This case comes before the court upon appeal from the judgment of the Court of Claims. The appeal is taken under the act of March 3, 1863, entitled "An Act to amend an Act to establish a court for the investigation of claims against the United States."

The 5th section of this act provides that either party may appeal to the Supreme Court of the United States from any final judgment or decree which may thereafter be rendered in any case by the Court of Claims wherein the amount in controversy exceeds. $3000, under such regulations as the Supreme Court may direct ; *Provided*, that such appeal be taken within ninety days after the rendition of such judgment or decree, and *Provided*, further, that when the judgment or decree will affect a class of cases, or furnish a precedent for the future action of any Executive Department of the government in the adjustment of such class of cases, or a constitutional question, and such facts shall be certified to by the presiding Justice of the Court of Claims, the Supreme Court shall entertain an appeal on behalf of the United States, without regard to the amount in controversy. .

The 7th section provides that in all cases of final judgment by the Court of Claims, or, on appeal by the said Supreme Court, where the same shall be affirmed in favor of the claimant, the sum due thereby shall be paid out of any general appropriation made by law for the payment and satisfaction of private claims, on presentation to the Secretary of the Treasury of a copy of said judgment, certified by the clerk of the said Court of Claims, and signed by the Chief Justice, or in his absence by the presiding Judge of the court.

The 14th section provides that no money shall be paid out of the Treasury for any claim passed upon by the Court of Claims, till after an appropriation therefor shall be estimated for by the Secretary of the Treasury.

It will be seen by the sections above quoted that the claimant whose claim has been allowed by the Court of Claims, or upon appeal by the Supreme Court, is to be paid out of any general appropriation made by law for the payment and satisfaction of private claims : but no payment of any such claim is to be made until the claim allowed has been estimated for by the Secretary of the Treasury, and Congress, upon such estimate, shall make an appropriation for its payment. Neither the Court of Claims nor the Supreme Court can do anything more than certify their opinion

to the Secretary of the Treasury, and it depends upon him, in the first place, to decide whether he will include it in his estimates of private claims, and if he should decide in favor of the claimant, it will then rest with Congress to determine whether they will or will not make an appropriation for its payment. Neither court can by any process enforce its judgment; and whether it is paid or not, does not depend on the decision of either court, but upon the future action of the Secretary of the Treasury, and of Congress.

So far as the Court of Claims is concerned we see no objection to the provisions of this law. Congress may undoubtedly establish tribunals with special powers to examine testimony and decide, in the first instance, upon the validity and justice of any claim for money against the United States, subject to the supervision and control of Congress, or a head of any of the Executive Departments. In this respect the authority of the Court of Claims is like to that of an Auditor or Comptroller—with this difference only; that in the latter case the appropriation is made in advance, upon estimates, furnished by the different Executive Departments, of their probable expenses during the ensuing year; and the validity of the claim is decided by the officer appointed by law for that purpose, and the money paid out of the appropriation afterwards made. In the case before us the validity of the claim is to be first decided, and the appropriation made afterwards. But in principle there is no difference between these two special jurisdictions created by acts of Congress for special purposes, and neither of them possesses judicial power in the sense in which those words are used in the Constitution. The circumstance that one is called a court and its decisions called judgments cannot alter its character nor enlarge its power.

But whether this court can be required or authorized to hear an appeal from such a tribunal, and give an opinion upon it without the power of pronouncing a judgment, and issuing the appropriate judicial process to carry it into effect, is a very different question, and rests on principles altogether different. The Supreme Court does not owe its existence or its powers to the Legislative Department of the government. It is created by the Constitution, and represents one of the three great divisions of power in the Government of the United States, to each of which the Constitution has assigned its appropriate duties and powers, and made each independent of the other in performing its appropri-

ate functions. The power conferred on this court is exclusively judicial, and it cannot be required or authorized to exercise any other.

The 3d Article of the Constitution, Section 1, provides that "the judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may. from time to time ordain and establish." And the last clause of the same article, after giving this court original jurisdiction in the cases therein specified, provides that in all other cases "the Supreme Court shall have appellate jurisdiction, both as to law and fact, with such exceptions and under such regulations as the Congress shall make."

The existence of this Court is, therefore, as essential to the organization of the government established by the Constitution as the election of a president or members of Congress. It is the tribunal which is ultimately to decide all judicial questions confided to the Government of the United States. No appeal is given from its decisions, nor any power given to the legislative or executive departments to interfere with its judgments or process of execution. Its jurisdiction and powers and duties being defined in the organic law of the government, and being all strictly judicial, Congress cannot require or authorize the court to exercise any other jurisdiction or power, or perform any other duty. Chancellor Kent says: "The judicial power of the United States is in point of origin and title equal with the other powers of the government, and is as exclusively vested in the court created by or pursuant to the Constitution, as the legislative power is vested in Congress, or the executive power in the President." 1 Kent Com. 290–291, 6th ed. See also Story Const., pp. 449–450.

The position and rank, therefore, assigned to this Court in the Government of the United States, differ from that of the highest judicial power in England, which is subordinate to the legislative power, and bound to obey any law that Parliament may pass, although it may, in the opinion of the court, be in conflict with the principles of Magna Charta or the Petition of Rights.

The reason for giving such unusual power to a judicial tribunal is obvious. It was necessary to give it from the complex character of the Government of the United States, which is in part National and in part Federal: where two separate governments exercise certain powers of sovereignty over the same territory, each independent of the other within its appropriate sphere of action,

and where there was, therefore, an absolute necessity, in order to preserve internal tranquillity, that there should be some tribunal to decide between the Government of the United States and the government of a State whenever any controversy should arise as to their relative and respective powers in the common territory. The Supreme Court was created for that purpose, and to insure its impartiality it was absolutely necessary to make it independent of the legislative power, and the influence direct or indirect of Congress and the Executive. Hence the care with which its jurisdiction, powers, and duties are defined in the Constitution, and its independence of the legislative branch of the government secured.

In No. 38 of the Federalist, written by Mr. Madison, the necessity and object of this provision is clearly stated. In that number, after explaining with great perspicuity the complex character of the government, being partly National and partly Federal, he proceeds to say (page 265 Towson's Ed.): "In this relation, then, the proposed government cannot be deemed a *national* one, since its jurisdiction extends to certain enumerated objects only, and leaves to the several States a residuary and inviolable sovereignty over all other objects. It is true that in controversies relating to the boundary between the two jurisdictions, the tribunal which is ultimately to decide is to be established under the general government. But this does not change the principle of the case. The decision is to be impartially made, according to the rules of the Constitution, and all the usual and most effectual precautions are taken to secure this impartiality. Some such tribunal is clearly essential to prevent an appeal to the sword and a dissolution of the compact."

It was to prevent an appeal to the sword and a dissolution of the compact that this Court, by the organic law, was made equal in origin and equal in title to the legislative and executive branches of the government: its powers defined, and limited, and made strictly judicial, and placed therefore beyond the reach of the powers delegated to the Legislative and Executive Departments. And it is upon the principle of the perfect independence of this Court, that in cases where the Constitution gives it original jurisdiction, the action of Congress has not been deemed necessary to regulate its exercise, or to prescribe the process to be used to bring the parties before the court, or to carry its judgment into execution. The jurisdiction and judicial power being vested in the court,

it proceeded to prescribe its process and regulate its proceedings according to its own judgment, and Congress has never attempted to control or interfere with the action of the court in this respect.

The appellate power and jurisdiction are subject to such exceptions and regulations as the Congress shall make. But the appeal is given only from such inferior courts as Congress may ordain and establish to carry into effect the judicial power specifically granted to the United States. The inferior court, therefore, from which the appeal is taken, must be a judicial tribunal authorized to render a judgment which will bind the rights of the parties litigating before it, unless appealed from, and upon which the appropriate process of execution may be issued by the court to carry it into effect. And Congress cannot extend the appellate power of this Court beyond the limits prescribed by the Constitution, and can neither confer nor impose on it the authority or duty of hearing and determining an appeal from a Commissioner or Auditor, or any other tribunal exercising only special powers under an act of Congress; nor can Congress authorize or require this Court to express an opinion on a case where its judicial power could not be exercised, and where its judgment would not be final and conclusive upon the rights of the parties, and process of execution awarded to carry it into effect.

The award of execution is a part, and an essential part of every judgment passed by a court exercising judicial power. It is no judgment, in the legal sense of the term, without it. Without such an award the judgment would be inoperative and nugatory, leaving the aggrieved party without a remedy. It would be merely an opinion, which would remain a dead letter, and without any operation upon the rights of the parties, unless Congress should at some future time sanction it, and pass a law authorizing the court to carry its opinion into effect. Such is not the judicial power confided to this Court, in the exercise of its appellate jurisdiction: yet it is the whole power that the Court is allowed to exercise under this act of Congress.

It is true the act speaks of the judgment or decree of this Court. But all that the Court is authorized to do is to certify its opinion to the Secretary of the Treasury, and if he inserts it in his estimates, and Congress sanctions it by an appropriation, it is then to be paid, but not otherwise. And when the Secretary asks for this appropriation, the propriety of the estimate for this claim, like all other estimates of the Secretary, will be opened to debate,

and whether the appropriation will be made or not will depend upon the majority of each House. The real and ultimate judicial power will, therefore, be exercised by the Legislative Department, and not by that department to which the Constitution has confided it.

This precise point was decided by this Court as long ago as 1792, in *Hayburn's Case,* 2 Dall. 409, and this decision has ever since been regarded as a constitutional law, and followed by every department of the government : by the legislative and executive branches as well as the Judiciary. It is referred to and recognized as authority in *United States* v. *Ferreira,* 13 How. 40. The case of Hayburn arose under an Act of Congress of March, 1792, which required the Circuit Courts of the United States to examine into the claims of the officers, soldiers and seamen of the Revolution, to the pensions granted to invalids by that act, and to determine the amount of pay that would be equivalent to the disability incurred, and to certify their opinion to the Secretary of War. And it authorized the Secretary, when he had cause to suspect imposition or mistake, to withhold the pension allowed by the Court, and to report the case to Congress at its next session. But every judge of the Supreme Court (except Thomas Johnson of Maryland, who does not appear to have had the question before him) was of opinion that the law was unconstitutional and void, and that when the decision of the court was subject to the revision of a Secretary and Congress, it was not the exercise of a judicial power, and could not therefore be executed by the court. These opinions were all communicated to General Washington, who was then President of the United States, and the law was repealed at the next session.

The case of the *United States* v. *Ferreira,* 13 How. 40, hereinbefore referred to, was decided on the same principle, and the distinction taken between judicial power in the sense in which these words are used in the Constitution, and a power given by law to examine a particular class of cases, and to certify an opinion as to their respective merits to an officer of the Executive Department, who might or might not act on it. Speaking of the laws under which the judge acted, the Court say, p. 48, " The powers conferred by these acts of Congress upon the judge, as well as the Secretary, are, it is true, judicial in their nature. For judgment and discretion must be exercised by both of them. But it is nothing more than the power ordinarily given by law to a com-

missioner appointed to adjust claims to land or money under a treaty ; or special powers to inquire into or decide any other particular class of controversies, in which the public or individuals may be concerned. A power of this description may constitutionally be conferred on a Secretary as well as on a Commissioner. But it is not judicial in either case, in the sense in which judicial power is granted by the Constitution to the Courts of the United States."

And it is very clear that this Court has no appellate power over these special tribunals, and cannot, under the Constitution, take jurisdiction of any decision, upon appeal, unless it was made by an inferior court, exercising independently the judicial power granted to the United States. It is only from such judicial decisions that appellate power is given to the Supreme Court.

Indeed no principle of constitutional law has been more firmly established or constantly adhered to, than the one above stated —— that is, that this Court has no jurisdiction in any case where it cannot render judgment in the legal sense of the term ; and when it depends upon the legislature to carry its opinion into effect or not, at the pleasure of Congress.

It was upon this principle that the case of *Hunt* v. *Pallas*, 4 How. 589, was decided. That case was originally decided in the territorial court of Florida. When the Territory became a State, Congress omitted to make provision for the transfer of the records to a tribunal of the United States, or to provide any tribunal to which a mandate might be directed, if any of the judgments of the territorial court should be affirmed or reversed. A motion was made here for a writ of error to be directed to the judges of the State court. But the motion was overruled, and the court said : "It would be useless and vain for this Court to issue a writ of error, and bring up the record and proceed to judgment upon it, when, as the law now stands, no means or process is authorized, by which our judgment could be executed."

The decision in *Hunt* v. *Pallas* was recognized and the principle again affirmed in the case of *McNalty* v. *Batty*, 10 How. 72, 79, and in a multitude of cases which have occurred since the present troubles began. The court has uniformly refused to take jurisdiction where there was not a court of the United States in existence, in possession of the original record, to which we were authorized by law to send a mandate to carry into effect the judgment of this court. The mandate is the form in which the judgment of this court is given, upon an appeal from an inferior court,

*West* v. *Brashear*, 14 Pet. 51; and the court can give no judg-. ment, and award no execution, unless there is an inferior court of the United States, in possession of the original record, over which this court has appellate power, and which it may compel to execute its judgments. If no such court exists, it could merely express an opinion, which, as we have said before, binds no one, is no judgment in the legal sense of the term, and may or may not be carried into effect at the pleasure of Congress. In relation to appeals from a State court, there is a special provision in the act of 1789, authorizing, in certain contingencies, a judgment and execution by this court.

The Constitution of the United States delegates no judicial power to Congress. Its powers are confined to legislative duties, and restricted within certain prescribed limits. By the second section of Article VI., the laws of Congress are made the supreme law of the land only when they are made in pursuance of the legislative power specified in the Constitution; and by the Xth amendment the powers not delegated to the United States nor prohibited by it to the States, are reserved to the States respectively or to the people. The reservation to the States respectively can only mean the reservation of the rights of sovereignty which they respectively possessed before the adoption of the Constitution of the United States, and which they had not parted from by that instrument. And any legislation by Congress beyond the limits of the power delegated, would be trespassing upon the rights of the States or the people, and would not be the supreme law of the land, but null and void; and it would be the duty of the courts to declare it so. For whether an act of Congress is within the limits of its delegated power or not is a judicial question, to be decided by the courts, the Constitution having, in express terms, declared that the judicial power shall extend to all cases arising under the Constitution.

This power over legislative acts is not possessed by the English courts. They cannot declare an act of Parliament void, because in the opinion of the court it is inconsistent with the principles of Magna Charta or the Petition of Rights. They are bound to obey it and carry it into execution. Yet, in that country, the independence of the Judiciary is invariably respected and upheld by the King and the Parliament as well as by the courts; and the courts are never required to pass judgment in a suit where they cannot carry it into execution, and where it is inoperative and of no value,

unless sanctioned by a future act of Parliament. The judicial power is carefully and effectually separated from the executive and legislative departments. The language of Blackstone upon this subject is plain and unequivocal. 1 Bl. Com. 268, 269.

"In this distinct and separate existence (says Blackstone) of the judicial power in a peculiar body of men, nominated indeed but not removable at pleasure by the crown, consists one main preservative of public liberty, which cannot subsist long in any State unless the administration of common justice be in some degree separated from the legislative and executive power. Were it joined with the legislative, the life, liberty, and property of the subject would be in the hands of arbitrary judges, whose decisions would be then regulated only by their own opinions and not by any fundamental principles of law, which, though legislators may depart from, yet judges are bound to observe. Were it joined with the executive, the union might soon be an overbalance for the legislative. For which reason, by Stat. Car. I. c. 10, which abolished the Court of Star Chamber, effectual care is taken to remove all judicial power out of the hands of the King's Privy Council, which it was then evident, from recent instances, might soon be inclined to pronounce that for law which was most agreeable to the Prince or his officers."

These cardinal principles of free government had not only been long established in England, but also in the United States from the time of their earliest colonization, and guided the American people in framing and adopting the present Constitution. And it is the duty of this Court to maintain it unimpaired as far as it may have the power. And while it executes firmly all the judicial powers entrusted to it, the Court will carefully abstain from exercising any power that is not strictly judicial in its character, and which is not clearly confided to it by the Constitution.

For the reasons above stated we are of opinion that this appeal cannot be sustained, and it is therefore

*Dismissed for want of jurisdiction.*

* The judgment of the Court dismissing *Gordon v. United States* for want of jurisdiction was announced March 9, 1865. On the 17th March, 1866, Congress passed an act repealing § 14 of the act of March 3, 1863, 14 Stat. 9, and giving an appeal to the Supreme Court from all judgments of the Court of Claims theretofore rendered of the character mentioned in the 5th section of that act, except in cases where the judgment had been paid at the Treasury : the appeal to be taken within ninety days from the passage of the act. The court thereupon promulgated the rules found in 3 Wall. vii.–viii., and the first case decided under them was *De Groot v. United States*, 5 Wall. 419.