IN RE JONES LAW (HYDE PARK PETITION).

1. JONES LAW PETITION HEARING IS JUDICIAL PROCEEDING REQUIRING COMPULSORY PROCESS FOR ATTENDANCE OF WITNESSES.

The hearing before a justice of the peace or judge of the common pleas, to determine the sufficiency of a petition for the establishment of dry territory within a residence district, provided by Sec. 4 of act 98 O. L. 68 (Lan. Rev. Stat. 7283d; B. 4364-30d), is judicial in character; it comprehends the filing of the petition, process for bringing in the proper parties and a judicial inquiry according to established rules and practice. Hence, it is prejudicial error for a mayor or judge to refuse to compel attendance of witnesses, duly served and failing to appear, where request is made therefor in good faith and within reasonable bounds.

2. CIRCUIT COURT MAY GRANT NEW TRIAL UPON REVERSING DECISION ON JONES LAW PETITION.

The final jurisdiction given to circuit courts by Sec. 12 of act 98 O. L. 68 (Lan. Rev. Stat. 7293a; B. 4364-30l) prevents further proceedings to higher courts but does not interfere with right to grant a new trial in the court below.

**J. D. Creed,** for contestant.

**E. R. James,** contra.

·GIFFEN, J.

Adopting the definition of a proceeding in court and what it comprehends as set forth in the case of *Zanesville* v. *Telegraph & Tel. Co.* 64 Ohio St. 67 [59 N. E. Rep. 781; 52 L. R. A. 150; 83 Am. St. Rep. 725], it is manifest that the hearing provided for in the act of March 15, 1906 (98 O. L. 68; Lan. Rev. Stat. 7283a; B. 4364-30a), is judicial in character and comprehends the filing of the petition, process for bringing in the proper parties, and a judicial inquiry according to

established rules and practice. The plaintiff in error or contestant was entitled upon application to require the clerk of the court of common pleas to issue a subpoena for witnesses under the seal of the court, the sheriff to serve them, and the process of the court to enforce obedience thereto. The court therefore erred in refusing to compel attendance of the witnesses who were duly served and failed to appear, there being about twenty-one in all. It is claimed, however, that no proper exception was reserved; but it appears on page 326 of the bill of exceptions that counsel for contestant made a request for a ruling by the court as to whether it would compel the attendance of such witnesses; but without then ruling thereon and apparently without fault of counsel, a discussion arose concerning a particular witness, Wenzel, then again as to four other witnesses; and thereupon the court said, as appears on pages 329 and 330: ''If those gentlemen come in, Glenn and Daniel, by half-past two o'clock I will hear from them, and also hear Mr. Sackhoff and Mr. Kraemer; and the case is closed, subject to the coming in of those four parties.'' To which counsel for the contestant excepted.

While this was not a direct and positive ruling upon the request made by counsel, it was significant and broad enough to overrule any request made and not already passed upon. The statute itself contemplates attempts at bribery, boycott, and intimidation of electors and the discharge of an employe; but it would be difficult, if not impossible, to defeat such attempts or such acts if the court refused to compel the attendance and testimony of witnesses. It also suggests the impossibility of advising the court in advance what the witnesses will testify, as they are at the time under restraint, or believed to be so. There seems therefore no good reason to deny a party in a proceeding of this kind the ordinary process of the court, provided his demands are made in good faith and within reasonable bounds. The court erred to the prejudice of the contestant.

The burden of proof was upon the petitioners to show that the territory described in the petition was a residence district; and while the evidence tending to prove such fact was slight, yet in the absence of any rebutting testimony it was sufficient to support the finding made.

The petition is composed of eleven different papers, each containing a description of the territory, and it is claimed that three of them contain a different description from that in the other eight, the discrepancy if any, consisting in a reference to the east boundary line of precinct H, instead of precinct B as a part of the east boundary

In re Jones Law.

line of the district. We deem it immaterial whether the reference be to precinct H or B, because the northern terminus of the east boundary line is fixed as the northeast corner of precinct M, and if the course southwardly and the monuments other than precinct B are followed, the same point in the center of Linwood avenue will be reached for the southern terminus, and the same territory included.

The final jurisdiction given by statute to this court only prevents further proceedings in a higher court, and does not interfere with the right to grant a new trial in the court of common pleas.

Judgment reversed and cause remanded for a new trial.

**Smith, J.,** concurs:

**SWING, J.,** dissenting.

I do not concur in the judgment of reversal for the reason that the errors committed by the court do not appear to be prejudicial. There was no claim in the argument in this case but that a majority of the resident electors of the district had signed the petition, and there is no intimation in the record that any one of these electors were induced to sign the petition through intimidation or bribery, or that counsel proposed to show by any of the witnesses subpoenaed, and which the court refused to bring into court, that bribery or intimidation had been resorted to.

Counsel said to the court as to three of the witnesses, he proposed to prove that they were not proper petitioners. One of them not being a resident, and two that they had not in fact signed the petition. Admitting that these three were not proper petitioners, there is still a large majority in its favor. As to the other witnesses, counsel made no statement to the court as to what he expected to prove by them; possibly he was not bound to state explicitly what he expected to prove by each witness, but having stated what he expected to prove by three of them, and making the statement to the court that his object was to get a ruling of the circuit court on the question of compelling the attendance of witnesses, I conclude that he had limited himself as to these three witnesses, and if there is still left a majority in favor of the petition after granting all he claims, I fail to see the error that is prejudicial and which would warrant a reversal of the proceedings.

As to the law of the case I fully concur in what the court say and state further—

It must be apparent to the most casual observer that this law as to the procedure of the courts in its determination and the enforcement of its provisions is very crude, and in order to give to it the

Hamilton County.

evident intention of the legislature, the courts must supply what has been omitted.

The law provides that there shall be a public hearing before the judge, and he shall decide upon the sufficiency of the petition and all other questions involved in the law. And such a hearing and decision must be in accordance with established rules and practice in judicial hearings and decisions.

If it is not judicial in its nature, the courts should have nothing to do with it. In *Gordon* v. *United States*, 117 U. S. 697, 706, Taney, J., says:

"And while it executes firmly all judicial processes entrusted to it, the court will carefully abstain from exercising any power that is not strictly judicial in its character, and which is not clearly confided to it by the constitution."

And further on page 702, he says:

"And congress cannot extend the appellate power of this court beyond the limits prescribed by the constitution, and can neither confer or impose on it the authority or duty of hearing and determining an appeal from a commissioner, or auditor, or any other tribunal exercising only special powers under an act of congress. Nor can congress authorize or require this court to express an opinion on a case, when its judicial power cannot be exercised and when its judgment would not be final and conclusive upon the rights of the parties and process of execution awarded to carry it into effect."

In line with the above is the law as announced in the first three propositions of the syllabus in the case of *Zanesville* v. *Telegraph & Tel. Co.* 64 Ohio St. 67 [59 N. E. Rep. 781; 52 L. R. A. 150; 83 Am. St. Rep. 725], referred to in the opinion of the court in this case. These propositions are as follows:

"1. The distribution of the powers of the state, by the constitution, to the legislative, executive, and judicial departments, operates, by implication, as an inhibition against the imposition upon either, of those powers which distinctively belong to one of the other departments.

"2. The fact that a power is conferred by statute on a court of justice, to be exercised by it in the first instance in a proceeding instituted therein, is, itself, of controlling importance as fixing the judicial character of the power, and is decisive in that respect unless it is reasonably certain that the power belongs exclusively to the legislative or executive department.

"3. The institution and prosecution of a proceeding in a court, comprehends the filing of a proper complaint, process for bringing

in the proper parties, and a judicial inquiry according to established rules and practice.''

The powers and duties of courts are clearly set forth in these decisions. Only such duties as are judicial in their nature can be imposed on the courts, and such duties must, of necessity, embrace the hearing and determination of some judicial question with the power to render judgment, and the further power to enforce the judgment when rendered.

To hear and determine a question in a judicial way, the court must have power to bring before it all proper evidence which bears on the question for determination. One of these necessary powers is that of compelling the attendance of witnesses within the jurisdiction of the court. Without such power there could be no trial.

When the court in this case refused to compel the attendance of witnesses, it denied to the parties the opportunity to have a fair trial and denied to itself the right to hear all the evidence it should have had in order to get at the right of the case.