NEWMAN, Circuit Judge,
dissenting from denial of the petition for rehearing en banc.
The errors in the court’s ruling that an executive branch agency can override the judgments of Article III courts, on the same issue and the same premises between the same parties, were discussed in my dissent from the court’s ruling and reported at 721 F.3d at 1347-1365. However, Article III judgments are “final and conclusive upon the rights of the parties,” Gordon v. United States, 117 U.S. 697, 702, 1864 WL 11666 (1864). A system of override by an administrative agency interferes with the power and obligation of the courts to “render dispositive judgments.” Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 219, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). Instead of finality after full litigation, full trial in the district court, and full appeal in the Court of Appeals, now the question of patent validity remains open, vulnerable to contrary disposition, unconstrained by any form of estoppel or restraint flowing from the finality of adjudication.
The court now declines en banc review. I write to stress the concern that this ruling is not only in violation of the Constitution, precedent, and the Federal Rules, but is contrary to the purposes of patent law as embodied in the statute and the Constitution.
The system of patents is founded on providing an incentive for the creation, development, and commercialization of new technology — “to promote the progress of science and useful arts” — achieved by providing a period of exclusivity while requiring disclosure of new technology. The court has weakened that incentive, by reducing the reliability of the patent grant, even when the patent has been sustained in litigation. This loss cannot be underestimated, especially for technologies that incur heavy development costs yet are readily copied. Amicus curiae the Biotechnology Industry Organization describes the effect of this ruling on biotech products:
Biotechnology products typically require close to a decade of development work and a fully capitalized investment that can approach $1.2 billion. Biotechnology companies rely heavily on patents to protect such substantial investments of time, resources, and capital. Devaluation of patent assets leads to a reduced incentive for companies to research, develop, and commercialize new biotechnology products that heal, feed, and fuel the world.
Other technologies are affected by the same principles, to varying degrees depending on the cost of development and the ease of copying.
The panel decision destabilizes issued patents, by ignoring the rules of finality. No public purpose is served by a regime in which commercially valuable innovations can be tied up in a succession of judicial and administrative proceedings until, as *1383 here, the patent expires. The Baxter patent in this case was immobilized in litigation or reexamination for eleven years. I emphasize the gamesmanship and abuses that are now facilitated, with no balancing benefit to the public.
Here the District Court for the Northern District of California rendered a final judgment of patent validity, infringement, and damages to the date of judgment. The Federal Circuit affirmed, leaving only the calculation by the district court of post-judgment damages. After this affirmation, the PTO issued a contrary reexamination decision on the question of obviousness — a matter of law — and the Federal Circuit affirmed the contrary PTO result, with no attempt to distinguish its prior judgment.
My concern is with the unconstrained free-for-all that this court has created, for PTO records show pervasive duplication of litigation and reexamination of the same patents.[1] The ensuing instability replaces innovation incentive with litigation cost, along with adverse effect on the patent based incentive for technological advance. Such gaming of a system designed to provide investment incentive through property rights, warrants thoughtful remediation, not facilitation.
In these post-mortem comments on the relation between litigation and PTO reexamination, both Judge Dyk and Judge O’Malley misstate my position on the role of reexamination. I was one of the initiators of the reexamination system, the product of the Carter Commission on which I served. My concern is its abuse. I have never opined that there are no circumstances in which the PTO may reexamine a patent that has been through litigation, and' I have intentionally avoided discussion of speculative situations. Here, this court’s final decision followed full litigation, and no reason is offered for departure from the law of the case, in favor of subsequent PTO reexamination on the same issues and evidence, requested by a party litigant.
Also contrary to Judge Dyk’s assertion, I do not suggest that a court’s final decision is always “immune” from review, for it is undisputed that Article III courts have the power to revisit their final judgments in appropriate circumstances. See Fed.R.Civ.P. 60 (“Relief From a Judgment or Order”). However, routinely subjecting Article III judgments to agency override is a different matter. In Fresenius II this court ruled that the PTO’s reexamination decision “must be given effect,” 721 F.3d at 1332, even if a contrary decision had previously been reached in the district and circuit courts and was final for purposes of preclusion, estoppel, and stare decisis.
In distinction from the procedure here ratified, where this court holds that neither the PTO nor this court is bound by this court’s prior decision, the principles of judicial finality are respected in every other circuit, as summarized at 721 F.3d at 1347 et seq. As the Court stated in Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), “a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies.” If the law of this court is to differ from the law of the land, we should confirm en banc the court’s intention to divest Article III courts of *1384 finality in patent cases. Neither “statute nor common sense” supports this theory. Nor does the newly enacted America Invents Act, cited by Judge Dyk as “reaffirming” congressional intent that Article III courts are subject to override by the PTO. Concurring Op. , at 1370 (“The result in this case reflects a choice made by Congress and recently reaffirmed in the America Invents Act....”). No such congressional choice can be found, nor any reaffirmation of the ruling in this case.
I respectfully dissent.

. The PTO statistical report for the period through September 30, 2012 states that of 1,919 patents that have undergone inter partes reexamination since inception of that system in 1999, at least 1,272 (66%) were also involved in district court litigation. Of 12,569 patents that have undergone ex parte reexamination since inception in 1981, at least 3,994 (32%) were involved in litigation. See http:// www.uspto. gov/patents/stats/.