UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Junior BAKER,
Defendant-Appellant.

No. 86–5455.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 13, 1986.

Decided Dec. 29, 1986.

Henry A. Martin (argued), Federal Public Defender, Nashville, Tenn., for defendant-appellant.

Joe B. Brown (argued), U.S. Atty., Nashville, Tenn., Harold McDonough, for plaintiff-appellee.

Before KENNEDY and NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Robert Junior Baker is appealing from two district court orders. The first order held that Baker did not have the mental competency to participate in the probation revocation proceedings against him, and placed him in the temporary custody of the United States Attorney General for treatment pursuant to 18 U.S.C. § 4241(d). In its second order, the district court placed Baker in the continued custody of the Attorney General pursuant to 18 U.S.C. § 4246(a); [1] having found Baker to be suffering from a mental disease or defect and that his release would pose a substantial risk of injury to another person, Baker was ordered to be held in a federal mental health treatment facility for an indefinite period of time.

Appellant argues that his initial commitment pursuant to section 4241 was invalid because he did not lack the mental capacity to understand the nature of the probation revocation proceedings and he was competent to waive his right to such proceedings. Regarding the district court's second commitment order, appellant asserts that he was denied his liberty without due process, that the district court lacked the power to commit him in that the court failed to adhere to the procedures outlined in section 4246(a), and that the order violated the Tenth Amendment.

For the reasons stated below, we hold that: (1) the district court's initial commitment of Baker was valid only up to a period of four months; and (2) Baker's continued commitment pursuant to section 4246 was secured without statutory authority and in violation of his due process rights.

## I.

Appellant herein, Robert Baker, was sentenced to nine-months incarceration on July 14, 1983, after pleading guilty to a charge of possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d). Appellant served five months and twenty-nine days of this sentence; the remaining time was suspended, and he was placed on probation for three years.

While still on probation, appellant was arrested for driving under the influence of alcohol. Based on this arrest, as well as appellant's failure to contact and report to his probation officer as instructed, a probation violator's warrant was issued on August 23, 1985. Baker was taken into custody on September 4, 1985 pursuant to the warrant, and a probation revocation hearing was scheduled for September 20, 1985 before United States District Court Judge Thomas A. Higgins. At the September 20th hearing, Baker asserted through counsel that he wished to waive his right to challenge the probation revocation proceedings; rather, he would prefer to serve the remainder of his sentence so that he would not have to report to a probation officer in the future.

During the course of this hearing the government questioned Baker's mental competency to understand the nature of the probation revocation proceedings. Following an exchange between the district court and Baker,[2] the court determined

---

1. Hereinafter, all references to statutory provisions will be to Title 18, United States Code, unless otherwise specified.

2. The record suggests that on September 20, 1985, appellant was probably suffering from some sort of mental illness. Appellant related to the court that something had come out of the television and had been "[l]ooking for signs, ... looking for wonders, signs on me, tatoos...." Further, the following exchange took place:

> The Court: Now, do you want to have a hearing and challenge the Government's proof?

Mr. Baker: Yes, Your Honor.
The Court: You do?
Mr. Baker: I will not—excuse me, I'll not accept the mark of the beast which is three sixes. I asked—begged, if Your Honor please, I begged them doctors, they said I was crazy in seeing things coming through the T.V. I begged,—got on my knees and I begged the Lord, what is it. I was looking at the T.V., it was coming through the T.V. to me. I didn't know where it was coming from.

that it was necessary for Baker to undergo a psychiatric examination to ascertain whether he had the mental competency to waive his right to challenge the revocation of his probationary status. Baker's counsel did not raise an objection to having his client undergo this initial psychiatric examination.

On September 30, 1985, a second hearing was conducted. At this hearing the government maintained that Baker was not competent to proceed with the probation revocation hearing and that he should therefore be committed to the custody of the United States Attorney General and be placed in the care of a psychiatric facility pursuant to section 4241(d). The government relied on a report prepared by a psychiatrist, Dr. Kenner, which indicated that Baker was suffering from schizophrenia and was not competent to understand the proceedings against him. Dr. Kenner specifically reported that Baker believed that his only defense was somehow dependent on a replay of the President's news broadcasts and that the court reporter was a messenger from God who could save him.

In response, Baker's counsel asserted that Baker was competent enough to understand the nature of a probation revocation hearing; that is, that he understood that the probation revocation hearing would determine whether he stayed on probation or served his remaining sentence in jail. Although Baker's counsel acknowledged that Baker's overall competency was in question, he maintained that his client was sufficiently competent to comprehend the choice he faced and to make that choice. Baker was then questioned by his counsel and the court, and he consistently maintained that he would prefer to serve 60 days in jail than to remain on probation.

The district court thereafter concluded that Baker was "presently suffering from mental disease or defect rendering him incompetent mentally to understand, despite his assertions, the nature and consequences of the proceedings against him," that he was "a danger to himself and to society and that he [was] in desperate need of ... psychiatric treatment...." The court, relying on section 4241(d), placed Baker in the custody of the Attorney General and an order reflecting this decision was issued on October 1, 1985. Pursuant to the court's order, Baker was committed to a psychiatric hospital—the Federal Correctional Institute in Butner, North Carolina (hereinafter referred to as Butner)—"for such time as is necessary to determine whether there is a substantial probability that in the foreseeable future the defendant will attain the capacity to permit the proceedings to continue."

On March 6, 1986, the government filed a motion to dismiss the probation violator's warrant. There is nothing in the record which indicates that the government had filed any motion with the district court prior to this date or that a hearing had been held with respect to Baker's competency and continued commitment. The motion to dismiss noted that it was unlikely that Baker would attain competency in the foreseeable future so as to enable the probation revocation proceedings to continue. It was also noted that, were the motion granted, Baker would be placed in the custody of the state of Tennessee since there was an outstanding warrant for his arrest based on an alleged parole violation.

A hearing was held on this motion the following day, March 7th. At this hearing, the government pointed out to the court

The Court: Well, I note you don't have shoes on. Why aren't you wearing your shoes?
Mr. Baker: I asked the good Lord, I'll walk the way he did if I can save everybody from the hell I've been through. I'll wipe the dust off my feet in protest against—
The Court: Against what?
Mr. Baker: Against Ronald Reagan.
The Court: Why are you protesting against the President?

Mr. Baker: For the simple reason I carried him long enough. I'll not carry him any more, not in my mind, not in—I just want to be free.
The Court: Now, you want to have a hearing and let the Government present its proof?
Mr. Baker: To put the mark of the beast on me? Yes, Your Honor, I would.

that Baker's condition had not improved, presumably because he was not taking medication. Further, Baker's psychiatric staff had determined that although Baker had refused to accept medication, they would not medicate Baker by force because he did not pose a threat of danger to himself or anyone at Butner. The government argued that its motion to dismiss was filed primarily because it did not believe it could show that Baker would pose a danger to others were he released, which was a prerequisite to continued civil commitment under section 4246. It was also noted that Baker had served more time than he would have had his probation been revoked. Baker did not oppose the government's motion.

The district court, before ruling on the motion, asked to hear from Dr. O'Brien, one of Butner's psychiatrists. In response to the court's questions, Dr. O'Brien testified that although Baker was not a threat to himself or anyone at Butner, he had threatened harm to his ex-wife and one of her relatives. Based on these threats, O'Brien opined that Baker would pose "a potential danger to someone in the community," and that he felt "uncomfortable with letting [Baker] out, back out into the community."

Dr. O'Brien further explained, in response to questions raised by Baker's counsel, that Baker's threats toward his ex-wife stemmed from Baker's belief that someone had been harming and possibly molesting his daughters. O'Brien acknowledged that he did not know whether Baker's daughters in fact had been molested and that no investigation had been conducted to verify or refute Baker's assertion;[3] however, were Baker's belief based in fact rather than delusion, Dr. O'Brien agreed that Baker's angry response would not have been inappropriate.

Following O'Brien's testimony, the government withdrew its motion to dismiss. Thereafter, the court ruled from the bench that Baker was to remain in the custody of the Attorney General pursuant to section 4246 because he was suffering from a mental disease or defect and that his release would create a substantial risk of bodily injury to another person. An order was issued to this effect on March 10, 1986. The March 10th order also stated that Baker was to be hospitalized for treatment until his release would not pose a risk of injury to another or until "it can be certified to this court that a state facility will assume the custody, care, and treatment of the defendant...." In the meantime, the court ordered that the superintendent of Butner was "to determine whether a certificate as described in Title 18, United States Code, Section 4246(a) can be filed with the court...."

On March 18, 1986, appellant filed a motion for a thirty-day extension to file a notice of appeal which was granted by the district court. On April 2, 1986, appellant filed two motions with the district court. One motion requested the court to reconsider and set aside its March 10th order and to grant a new hearing. The other requested the court to set aside the March 10th order, to dismiss all the proceedings against Baker and to release him from custody. Before these motions were ruled on, however, Baker filed a notice of appeal from the October 1, 1985 and March 10, 1986 commitment orders. Accordingly, the district court ruled, on April 23, 1986, that it lacked jurisdiction to consider Baker's April 2, 1986 motions.

---

**3.** In discussing this matter further with the district court, Dr. O'Brien made the following statements:

The problem I'm having, how do I justify for keeping him there when I can't even determine whether his situation that he described is valid or not valid, based on reality or not based on reality? To what degree have his daughters actually been molested? Is his anger justified? How do I determine that? And right now I'm just working with him and based on that, and previous behavior, and the things that he has said that have delusional components to them, I'm saying that, you know, that potentially he is dangerous. I have to say that. And what he is saying is that "I'm not going to change my position. I feel my daughters are in jeopardy. I'll still, you know, if someone is harming them, I'll still try and protect them." And so we are at sort of a stalemate. How do I determine what is reality based and what is not?

It is in this procedural posture that the case comes before us on appeal.

## II.

### A.

Appellant argues that he was sufficiently competent, even if only limitedly so, to waive his right to challenge the probation violation proceedings. Since he was competent to waive this right, he asserts that his initial commitment pursuant to 18 U.S.C. § 4241 was erroneous and that the district court therefore lacked authority to proceed under section 4246 at the second hearing. His argument, therefore, only challenges the sufficiency of evidence upon which the district court based its initial commitment decision on September 30, 1985.

■ While there is testimony in the record from which one could conclude that Baker understood the difference between being in jail and being on probation, there is also evidence which suggests that Baker was, as a result of his mental disease or defect, unable to understand the nature of the probation revocation hearing. Judging the credibility and mental capacity of witnesses and resolving conflicts in the evidence are within the unique capacity of the factfinder; and, since we cannot find the district court's factual findings regarding Baker's mental competency to be clearly erroneous, *see* Fed.R.Civ.P. 52(a), we do not find an infirmity with regard to Baker's initial commitment.

### B.

■ However, inasmuch as appellant claims that his confinement since September 1985 has been illegal, we feel compelled to address the length of his commitment pursuant to the authority of section 4241. Section 4241(d) specifies that the Attorney General is to hospitalize for treatment the individual committed pursuant to this section,

(1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the fore-

seeable future he will attain the capacity to permit the trial to proceed; and

(2) for an additional reasonable period of time until—

(A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed; or

(B) the pending charges against him are disposed of according to law;

whichever is earlier.

18 U.S.C. § 4241(d). We believe that this provision requires that a determination as to the individual's mental condition be made within four months, and that the individual cannot be held pursuant to section 4241 in excess of four months unless the court finds that the individual is likely to attain competency within a reasonable time.

■ In the instant case, appellant was held from September 30, 1985 until March 1986 before the government filed a motion to dismiss the probation violator's warrant. This confinement was clearly in excess of four months, and there is nothing in the record to indicate that his period of confinement was properly extended. Therefore, although the court's initial commitment of appellant on September 30th was valid, we hold that there was no authority to confine appellant beyond the four months authorized by section 4241(d).

### III.

### A.

■ Appellant raises several challenges to his continued commitment pursuant to the March 10, 1986 order. Specifically, he argues that since the district court failed to follow the procedures outlined in section 4246, the court was without authority to commit him for an indefinite period of time; similarly, the procedures adopted by the district court were inadequate under the Due Process Clause. He further argues that his commitment was in contravention of the Tenth Amendment. The govern-

ment asserts that this court is without jurisdiction to review these arguments because appellant failed to raise them in the proceedings below. We reject the government's position.

While courts of appeals generally refuse to consider issues not passed upon by lower courts, *Sigmon Fuel Co. v. TVA,* 754 F.2d 162, 164–65 (6th Cir.1985),

> [t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.... Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, ... or where "injustice might otherwise result."

*Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (quoting *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)). In the instant case, substantial questions have been raised regarding the propriety of appellant's commitment; because of the significance of appellant's liberty interest at stake, we find it necessary to address appellant's claims in order to "prevent manifest injustice and to promote procedural efficiency." *United States v. Cheama,* 783 F.2d 165, 168 (10th Cir.1986).[4] We recognize this to be a very limited exception to our previous pronouncement in *Sigmon Fuel.*

## B.

Appellant argues that he never received notification that the March 7, 1986 hearing was going to be a section 4246 civil commitment hearing. Since the government had filed a motion to dismiss charges and no certificate pursuant to section 4246(a) had been issued, Baker asserts that he was not adequately notified that the government intended to commit him for an indefinite period of time. Having been denied ade-

quate notice, Baker asserts that he was denied the opportunity to prepare to rebut the government's evidence and to put on witnesses in his own defense; therefore, he argues that he was deprived of his liberty without due process. In addition, Baker argues that because a certificate was not issued pursuant to section 4246(a), the court was without statutory authority to commit him involuntarily for an indefinite period of time. We find the appellant's arguments persuasive.

The civil commitment of an individual into a mental hospital is a significant deprivation of liberty, particularly when that commitment is of indefinite duration; such a deprivation, therefore, must be accompanied by procedural safeguards which adhere to due process requirements. *See Vitek v. Jones,* 445 U.S. 480, 494, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (the transfer of a prisoner to a mental health facility "implicate[s] a liberty interest protected by the Due Process Clause"); *Addington v. Texas,* 441 U.S. 418, 425, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979) (a "civil commitment for any purpose" deprives a person of liberty and invokes the protection of the Due Process Clause); *United States v. Perry,* 788 F.2d 100, 113 (3d Cir.) ("A civil detention order results in the deprivation of the most fundamental of all personal liberties."), *cert. denied,* —— U.S. ——, 107 S.Ct. 218, 93 L.Ed.2d 146 (1986). In determining what process is due, a court must consider the nature of the liberty interest at stake, the "risk of an erroneous deprivation of such interest" when certain procedures are used, and the government's interest in utilizing the procedures being challenged. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Congress, in structuring the laws providing for the civil commitment of offenders who have a mental disease or defect, was cognizant of the substantial liberty interest at stake and set forth procedural guidelines

---

**4.** *Cheama* is a case similar to the case before this court; however, unlike the court in *Cheama,* we do not believe the record requires fur-

ther development before we can reach the merits of the issues presented.

to be followed before such individuals could be committed. A review of the statutory provisions dealing with indefinite commitments, and the legislative history behind them, is a proper starting point for analyzing appellant's claims.

Section 4246 provides in relevant part:

**(a) Institution of proceeding.**—If the director of a facility in which a person is hospitalized certifies that a person whose sentence is about to expire, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person, is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available, he shall transmit the certificate to the clerk of the court for the district in which the person is confined. The clerk shall send a copy of the certificate to the person, and to the attorney for the Government, and, if the person was committed pursuant to section 4241(d), to the clerk of the court that ordered the commitment. The court shall order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another. A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section.

**(b) Psychiatric or psychological examination and report.**—Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c).

**(c) Hearing.**—The hearing shall be conducted pursuant to the provisions of section 4247(d).

**(d) Determination and disposition.**—If, after the hearing, the court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall commit the person to the custody of the Attorney General. The Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment. The Attorney General shall make all reasonable efforts to cause such a State to assume such responsibility. If, notwithstanding such efforts, neither such State will assume such responsibility, the Attorney General shall hospitalize the person for treatment in a suitable facility, until—

(1) such a State will assume such responsibility; or

(2) the person's mental condition is such that his release, or his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would not create a substantial risk of bodily injury to another person or serious damage to property of another;

whichever is earlier. The Attorney General shall continue periodically to exert all reasonable efforts to cause such a State to assume such responsibility for the person's custody, care, and treatment.

.   .   .   .   .

Section 4247(d), referred to in section 4246(c) above, sets forth requirements for the commitment hearing itself. That section provides that the individual shall be represented by counsel and "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his own behalf, and to confront and cross-examine

witnesses who appear at the hearing." These hearing procedures were included explicitly to comply with due process requirements. *See* S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S. Code Cong. & Ad.News 3182, 3418, 3434.

The most significant provision of section 4246 for the purposes of this appeal is subsection (a). That provision specifies the procedures which are to be followed *before* a section 4246 commitment hearing is held. Specifically, the director of the mental health facility has the responsibility "to determine preliminarily whether the defendant should be released." *Id.* at 3433. The director must certify three things: (1) that the individual is suffering from a mental disease or defect; (2) that his release would pose a substantial risk of bodily injury to another or serious damage to property of another; and (3) that suitable state arrangements for his care are not available. A certificate to this effect is to be transmitted to the clerk of the court for the district in which the individual is confined, and copies are to be mailed to the individual and the attorney for the government. "Upon receipt of the certificate," *id.*, the district court must schedule and hold a hearing which complies with due process requirements to determine whether the individual is suffering from a mental disease or defect and whether his release would pose a threat of bodily injury or property damage.

The government does not attempt to argue that a section 4246 certificate was issued prior to the March 7th commitment hearing, but simply asserts in its brief before this court that a certificate was not issued because one was not requested. Similarly, the government maintains that the March 7th hearing complied with due process requirements because Baker was represented by counsel, was permitted to testify and was provided an opportunity to present his own witnesses and cross-examine the government's witness. In response

to appellant's argument that he was not properly notified that the March 7th hearing was going to be a section 4246 commitment hearing, the government appears to argue that the March 7th hearing was always intended to be a hearing on appellant's competence although the government does not support this claim with any evidence. We are totally unpersuaded by the government's position.

One of the most fundamental requirements of due process is that an individual must receive adequate notice of the charges or claims being asserted against him. We believe that subsection (a) of section 4246 sets forth a very clear requirement that an individual be notified that a commitment hearing will be held in the future and what the basis for that hearing is. Since a certificate was not filed with the court in the district in which defendant is confined, nor was defendant notified that a section 4246 certificate was filed, we find that defendant did not receive constitutionally adequate notice of the claims which he had to defend against.

Further, without such notification, the hearing procedures outlined in section 4247(d) are without force. Notice is required to provide an individual with a *meaningful* opportunity to challenge the government's evidence; an individual who has not been notified of the government's intention to commit the person indefinitely or of the grounds relied on by the government, simply has not been afforded an opportunity to present his own witnesses and to challenge adequately the government's evidence.

An example of the unfairness which might arise when proper notification is not given is Baker's assertion that he was not afforded a meaningful opportunity to rebut the government's proof regarding his potential for future dangerousness.[5] It is essential that an individual be provided a

---

5. Although the government states that Dr. O'Brien was Baker's witness, the record indicates that Dr. O'Brien was cross-examined by Baker's counsel, and there is nothing in the record to support the government's claim. Further, even had Dr. O'Brien been Baker's witness, Baker was not put on notice as to the nature of the testimony to be solicited from O'Brien.

meaningful opportunity to challenge the government's proof so that the committing court has the benefit of an adversary proceeding. This includes being notified as to the nature of the government's evidence, as well as having an opportunity to present witnesses on one's behalf.

The certificate not only serves a notification function under the Due Process Clause, but it also acts as a partial guarantee that the section 4246 commitment procedures will be "used only in those rare circumstances where a person has no permanent residence or there are no State authorities willing to accept him for commitment." 1984 U.S.Code Cong. & Ad. News at 3432. Congress' decision to limit the use of these procedures was a result of its belief that it "is essentially the function of the States" to provide care and treatment to mentally ill individuals whose sentences are about to expire or who no longer face federal charges because of their illness. *Id. See also Addington v. Texas,* 441 U.S. 418, 426, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979); *United States v. Cohen,* 733 F.2d 128, 137 (D.C.Cir.1984) (en banc); *Higgins v. United States,* 205 F.2d 650, 652 (9th Cir.), *cert. dismissed,* 346 U.S. 870, 74 S.Ct. 134, 98 L.Ed. 379 (1953). By placing the initial burden on the director of the facility to make the necessary determinations, a section 4246 hearing may not be necessary if an appropriate state facility will accept the individual or if it is believed that the individual does not pose a danger to the community.

■ In the instant case, the district court, in essence, sua sponte called a section 4246 hearing before the requisite findings were made by the director at Butner. The court was operating under the incorrect assumption that Baker could be retained in federal custody until it was certified to the court that the state *would* agree to assume his care; in contrast, a section 4246 hearing cannot be conducted and a section 4246 commitment order cannot be issued until it has been certified to the court that the state *will not* accept the individual.[6] Further, a certificate must be filed in, and a section 4246 hearing must be held in, the district in which the individual is confined, not the district in which he had initially been charged with an offense.

We hold, therefore, that by failing to adhere to the procedures outlined in section 4246, the district court lacked statutory authority to commit Baker and deprived Baker of his liberty without due process.

## C.

Finally, appellant argues that the district court's order committing him indefinitely is in contravention of the Tenth Amendment to the Constitution. In essence, appellant asserts that the federal government lacks the power to civilly commit individuals who may be permanently mentally ill and who have already served their time in prison and do not face additional charges.

■ The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." This amendment has been described as a "truism" in the sense that it does not function as a limitation on Congress' power to act, but merely reiterates that whatever power was not granted to the federal government cannot be exercised by the federal government. *See United States v.*

---

**6.** In addition, section 4246(d) provides that, once an individual is found to be suffering from a mental disease or defect and to be potentially dangerous, the district court is merely to commit the individual to the Attorney General's custody; the Attorney General, in turn, is then required to release the individual to the state if the state will assume responsibility for the individual. The Attorney General is required "to make all reasonable efforts to cause such a State to assume such responsibility." Subsection (d) further provides that the individual is only to be hospitalized until the state assumes the responsibility for his care, or the individual gets better. There is nothing in the statute which indicates that further court action is necessary, or even contemplated, before an individual can be released to the state. *Cf.* 18 U.S.C. § 4246(e) (where a court order is necessary for an individual to be discharged on the basis that he has recovered or is no longer dangerous).

*Darby,* 312 U.S. 100, 124, 61 S.Ct. 451, 462, 85 L.Ed. 609 (1941). Therefore, when a federal statute has been challenged under the Tenth Amendment, the proper inquiry is whether Congress has the power, pursuant to its enumerated powers, to enact the specific piece of legislation. *Cf. Gordon v. United States,* 117 U.S. 697, 705 (1864);[7] *Greenwood v. United States,* 350 U.S. 366, 375, 76 S.Ct. 410, 415, 100 L.Ed. 412 (1956) (Congress has the power pursuant to the Necessary and Proper Clause to provide for the temporary commitment of individuals who are incompetent to stand trial); *United States v. Cohen,* 733 F.2d 128, 137 and n. 15 (D.C.Cir.1984) (en banc) (where it was noted that the Court in *Greenwood* carved out an exception to the Tenth Amendment).

Had Baker's commitment pursuant to section 4246 been valid, this issue would be properly before us; inasmuch as the district court did not adhere to the statutory scheme and Baker's commitment was in violation of the statute, however, we believe this is not the appropriate case to consider the limits of Congress' power.

### IV.

In conclusion, we find that although the appellant's initial commitment pursuant to section 4241 was proper, there was no authority to confine appellant beyond the statutorily authorized four months since no further action was taken to extend his commitment. We also conclude that the district court lacked statutory authority to issue its March 10, 1986 order and that Baker was thereby deprived of his liberty without due process when he was committed for an indefinite period of time.

In determining the appropriate relief to be granted, two considerations influence our decision. First, we note that de-

fendant brought a direct appeal from the district court's commitment orders and did not file a habeas corpus petition. Second, after this case was placed on our appellate docket, the director of Butner filed what purports to be a section 4246 certificate with the clerk of courts in the district in which Baker is confined. Since section 4246(a) provides that such a certificate stays the release of Baker pending further procedures, and inasmuch as he is confined outside our jurisdiction, we find that we are without authority to order his release. Accordingly, we have jurisdiction only to order, which we do at this time, that the district court's March 10, 1986 order be VACATED in accordance with our conclusions set forth herein.

---

7. The decision of the Supreme Court to dismiss the *Gordon v. United States* case is found at 69 U.S. (2 Wall.) 561, 17 L.Ed. 921 (1864). The opinion of Chief Justice Taney, appearing in the appendix to volume 117 of the United States Reports, was reported to have been "carefully considered by the members of the court in reaching the conclusion reported in 2 Wall. 561; and it was proposed to make it the basis of the opinion...." 117 U.S. at 697. The paper was not rediscovered until after Chief Justice Taney's death, however. It was then printed in volume 117 with an explanatory preamble, including a note that this was the "last judicial paper" prepared by Chief Justice Taney.