875 F.2d 863
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
GAIB EQUIPMENT COMPANY and Richard C. Gaib, Plaintiffs-Appellants,
v.
J.I. CASE COMPANY and J.I. Case Credit Corp., Defendants-Appellees.
 Nos. 88-3040, 88-3072 and 88-3252.
 United States Court of Appeals, Sixth Circuit.
 May 17, 1989.
 
 Before MERRITT and BOGGS, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Richard C. Gaib and Gaib Equipment Company appeal the district court's grant of summary judgment in this antitrust action with pendent state law claims. For the reasons that follow, we affirm the district court.
 
 
 2
 * J.I. Case Company ("Case") manufactures and sells agricultural and construction equipment, including "utility" construction equipment such as skid steer loaders, wheel loaders and crawlers. J.I. Case Credit Corporation ("Case Credit") is a Case subsidiary that provides financing for purchasers of Case equipment. Case distributes its products through independent dealers and company-owned retail outlets.
 
 
 3
 Gaib Equipment ("Gaib") became a Case dealer in 1972. Gaib executed two separate agreements with Case: one for agricultural equipment and one for construction equipment. Each agreement provided that it could be terminated for any reason by the parties with a ninety-day notice.
 
 
 4
 On September 16, 1974, Gaib gave written notice to Case terminating the 1972 dealer agreements effective November 1, 1974. Among the reasons given by Gaib for the termination were "that the dollar requirements for this business are becoming too large," "loss in warranty recovery," "defective units or unavailable machines," and "Case company stores." However, on November 29, 1974, Gaib sent a letter to Case indicating a desire to remain a Case dealer and asking Case to forward new dealer agreements. On January 10, 1975, Gaib and Case entered into a new dealer agreement covering both products and again providing for a ninety-day notice of cancellation from Case to Gaib, but only a thirty-day notice of cancellation from Gaib to Case.
 
 
 5
 Gaib continued to finance the purchases of Case equipment under successive financing and security agreements with Case Credit. Gaib entered into the last of these financing agreements on March 22, 1977. These security agreements gave Case Credit a security interest in certain collateral which consisted primarily of Gaib's inventory of new Case machinery. Upon the retail sale by Gaib of any of the collateral, the proceeds were to be held in trust and paid to Case Credit as follows:
 
 
 6
 All proceeds of Collateral received by Debtor [Gaib] shall be held by Debtor upon an express trust for Secured Party [Case], shall not be commingled with any other funds or property of Debtor, and shall be remitted to Secured Party pursant [sic] to the current schedule of discount and terms issued by J I Case Company.
 
 
 7
 (1977 wholesale financing and security agreement Art. V.A)
 
 
 8
 During the time relevant to this lawsuit, Gaib competed in tractor sales with 22 other dealers in the area. Richard Gaib testified that the John Deere dealer, the International Harvester dealer, and the Massey-Ferguson dealer were regarded as his main competitors. The Harvester dealer described the local market as "extremely competitive" both before and after Gaib's exit from the market. The Deere dealer also termed the local market as competitive. Richard Gaib identified twelve dealers that he considered competitive with him in the construction equipment market, although the Case share of that market was higher than with farm equipment. Richard Gaib also testified that at all times relative to this case, the construction equipment market was price-competitive. During the period from 1977 to 1981, Case's national share of the new tractor market fell from 7.60% to 5.43%, and its share of the construction equipment market ranged from 22.6% to 26.2% nationally.
 
 
 9
 Gaib alleges that in 1976 Case began to engage in anti-competitive behavior, including illegal tie-in arrangements, violations of exclusive territory agreements, direct suppresion of bid competition, and discriminatory terms. Gaib also alleges that Case breached the dealer agreements because Case did not reimburse Gaib for repairs made pursuant to the manufacturer's warranty. In August 1979, Gaib began discussions about the possibility of a mutual termination of the dealer agreements. Gaib later decided not to sign a mutual termination agreement.
 
 
 10
 Case alleges that sometime after these discussions, in August 1981, it discovered that Gaib had sold a Case backhoe worth $36,000 without paying the proceeds to Case Credit. Gaib claims that it refused to make the payment because its claims against Case were not resolved. Gaib said it preferred to keep the proceeds for warranty reimbursement, and also claimed that it had never segregated the funds in the past. On September 17, 1981, Case sent Gaib a letter terminating the dealer agreements ninety days hence or December 17, 1981. However, Gaib alleges that the letter was not sent by mail or registered mail, but was hand delivered, and therefore did not act as notice of termination. In any event, Case alleges even before the notice would have taken effect, Gaib sold another collateral item and kept the proceeds.
 
 
 11
 On November 6, 1981, Case Credit filed suit against Gaib in state court to recover a debt of $237,635.85 and to obtain possession of the remaining collateral securing that debt. On December 2, 1981, the court conducted a hearing on Case Credit's motion for prejudgment seizure of the collateral. On December 3, 1981, the court entered a writ of prejudgment replevin, awarding Case Credit immediate possession of the collateral. Gaib alleges that Case Credit seized some property as to which it had no security agreement, and that its original bond was faulty and had to be refiled. Gaib had the right to retake possession of the collateral by posting a redelivery bond under Ohio Rev.Code, Sec. 2737.09, but did not exercise this right.
 
 
 12
 After Case sent notice to the creditors of Gaib and to Gaib, Case sold all of this collateral at auction on January 12, 1982, pursuant to Article IX of the security agreement between Case and Gaib. According to Gaib, approximately $280,000 was raised at the sale. Case then petitioned the federal court for a deficiency judgment of $12,808.84.
 
 
 13
 On December 4, 1981, after the state court order of prejudgment replevin, Gaib filed suit in federal court and removed the state court action to federal court. The two cases were then consolidated. Gaib's complaint alleged breach of contract, antitrust violations, common-law fraud, and illegal conversion of the collateral.
 
 
 14
 On August 25, 1983, Case filed a motion to dismiss Gaib's illegal conversion claim. Gaib made no response, and on January 25, 1984, the district court dismissed the claim. On October 1, 1984, Case filed a motion for summary judgment. The district court bifurcated the issues between the antitrust claims and the other claims, granting Case's motion for summary judgment for breach of contract and fraud on June 17, 1987, and granting Case's motion on the antitrust claim on December 11, 1987. Final judgment was then entered in Case's favor on all claims (including Case's deficiency claim) on December 30, 1987. The court then granted Case's motion for attorney's fees in the amount of $12,859.46 on February 23, 1988. This appeal followed.
 
 II
 
 15
 When reviewing the granting of summary judgment by the district court, this court must determine if there is any genuine issue of material fact such that a jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). To defeat summary judgment, a party cannot rest on mere allegations in the pleadings or on unsupported contentions. Mas Marques v. Digital Equipment Corp., 637 F.2d 24, 27 (1st Cir.1980). Subjective, conclusory opinions are not sufficient to defeat a summary judgment claim. Viterbo v. Dow Chemical Co., 826 F.2d 420, 424 (5th Cir.1987).
 
 
 16
 Appellant challenges the district court's grant of summary judgment on the breach of contract issue and the replevin issue.[1] Appellant alleges that the district court erred in dismissing the breach of contract claim because there were genuine issues of disputed fact to be sent to a jury. Gaib apparently contends that there were disputed issues regarding the substance of performance of the contract, specifically, whether the contract was terminated in good faith and whether the termination clause itself was unconscionable.
 
 
 17
 Gaib asserts that good faith requires that agents cannot be terminated if the agent has made certain expenditures based on assurances by the principal. Gaib cites Cardinal Stone Co., Inc. v. Rival Manufacturing Co., 669 F.2d 395, 396 (6th Cir.1982) (citing Corenswet, Inc. v. Amana Refrigeration, Inc., 594 F.2d 129 (5th Cir.), cert. denied, 444 U.S. 938 (1979)), for this proposition. In the present case, Gaib alleges that the court should not have dismissed the claim because Gaib produced evidence that he made certain expenditures made pursuant to the dealer agreements that raised an issue of good faith for the fact finder.
 
 
 18
 This argument is unpersuasive. The court in Cardinal Stone explicitly rejected the requirement of good faith in dealer termination clauses, finding instead that the proper test was one of unconscionability. Cardinal Stone, 669 F.2d at 396. Furthermore, as the district court correctly noted, even if good faith were a requirement, these expenditures were compensated by the long term of the initial agreement.
 
 
 19
 Nor was the contract unconscionable. One of the necessary elements of unconscionability in dealer termination clauses is coercion or force to enter the contract. See Corenswet, 594 F.2d at 139 n. 12. There was no evidence whatsoever of coercion in the present case. Indeed, Gaib itself requested the present contract in 1975 after its termination of the previous contract. Therefore, the district court correctly dismissed Gaib's breach of contract claim on summary judgment.
 
 III
 
 20
 Gaib also objects to the district court's summary judgment affirming Case's deficiency judgment against Gaib and the district court's summary dismissal of Gaib's illegal replevin claim against Case. It appears that Gaib's main argument in both instances is that the replevin action was unconstitutional. We interpret Gaib as asserting that if the action were unconstitutional, the deficiency judgment derived from that action cannot stand.[2]
 
 
 21
 Gaib's argument that the replevin statute under which the seizure and sale of his goods occurred violates the Ohio State Constitution is correct. In General Electric Credit Corp. of Tenn. v. Hatch, 3 Ohio App.3d 80, 443 N.E.2d 1054 (1982), the Court of Appeals of Ohio, Hamilton County, determined that O.R.C. Sec. 2737.02 was unconstitutional. However, this defect does not defeat the district court's summary affirmance of the deficiency judgment.
 
 
 22
 Gaib did not raise any constitutionality objection in the state court replevin action or prior to the time that judgment was affirmed in the district court. Although this court can address an issue not raised below in order to prevent manifest injustice and to promote procedural efficiency, United States v. Baker, 807 F.2d 1315, 1321 (6th Cir.1986), addressing the constitutionality of the state court replevin action would do neither.
 
 
 23
 We first note that the major constitutional infirmity of O.R.C. Sec. 2737.02 was its lack of a statutorily mandated hearing before seizure of objects for prejudgment replevin. See General Electric, 3 Ohio App.3d at 82, 443 N.E.2d at 1056. In the present case, Gaib was afforded a hearing before seizure. We are also persuaded by Case's argument that even if it had been unable to act under O.R.C. Sec. 2737.02, it could have conducted the same seizure of goods and sale pursuant to O.R.C. Secs. 1309.46 and 1309.47 (Ohio's version of the Uniform Commercial Code). Gaib has presented no evidence which would support a conclusion that the seizure and sale were anything other than commercially reasonable.[3] Since the replevin action was sound, the district court's summary dismissal of Gaib's illegal conversion claim was proper[4] and the grant of summary judgment was appropriate on the deficiency judgment as well.
 
 
 24
 We AFFIRM the district court's grant of summary judgment and award of attorney's fees pursuant to the security agreement.[5]
 
 
 
 [1]
 Although much of Gaib's brief is devoted to antitrust claims, counsel at oral argument conceded, as he must, that the evidence on the record could not give rise to the claimed antitrust violations according to the standards articulated by this court in Crane & Shovel Sales Corp. v. Bucyrus-Erie Co., 854 F.2d 802, 806 (6th Cir.1988)
 Additionally, by not arguing its claims of breach of oral contract, breach of warranty obligations, and common law fraud in its brief, appellant has waived them on appeal. See In re Texas Mortgage Services Corp., 761 F.2d 1068, 1073-74 (5th Cir.1985).
 
 
 [2]
 Although Gaib may have waived its argument regarding unlawful conversion by failing to oppose Case's motion to dismiss the illegal conversion claim, we must still consider its constitutionality argument as it relates to the affirmance of the deficiency judgment
 
 
 [3]
 Nor is there any evidence in the record which supports Gaib's allegations that the sale, even if constitutional, was otherwise wrongful or an illegal conversion
 
 
 [4]
 Since we hold that the district court's summary dismissal of Gaib's illegal conversion claim was proper, we need not consider whether Gaib waived this argument on appeal by failing to file a timely objection to the motion to dismiss
 
 
 [5]
 We decline to strike the joint appendix, dismiss Gaib's appeal or impose Rule 11 Sanctions against Gaib's attorney for failing to file a proper joint appendix under Sixth Circuit Rule 11(1). Although there are some mistakes in the joint appendix, we do not believe that it is so "substantially out of compliance with the requirements of this local rule," as to merit the sanctions requested by appellee