886 F.2d 330
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dennis CARROLL, Plaintiff-Appellant,
v.
Herman C. DAVIS, Charles Cubine, and Tony Bowers,
Defendants-Appellees.
 No. 88-6051.
 United States Court of Appeals, Sixth Circuit.
 Sept. 29, 1989.
 
 Before RALPH B. GUY, Jr., BOGGS and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellant Dennis Carroll was placed in prison administrative segregation for alleged disciplinary violations. Carroll appeals the dismissal of his claim for money damages against certain prison officials and the denial of his motion to amend his complaint to join members of the Institutional Disciplinary Board of Fort Pillow State Farm in Tennessee. Carroll also asserts that his administrative segregation constitutes cruel and unusual punishment in violation of his eighth amendment rights. Finding no error in the decision of the district court, we affirm.
 
 
 2
 * Carroll was a prisoner at Fort Pillow State Farm in Henning, Tennessee when a riot broke out there on July 11, 1985. Warden Herman Davis charged Carroll with being a leader in that riot on July 16, 1985. Davis requested that Carroll be placed in Involuntary Administrative Segregation (IAS). Carroll was notified of this charge through Form # CR-2123 entitled, "Involuntary Administrative Segregation Placement Record."
 
 
 3
 Corporal Sammie Williams presented this form to Carroll on July 16, 1985; apparently Carroll refused to sign the form, which signature was to serve as an acknowledgement of the charge. Williams noted Carroll's refusal to sign, and presented him with a carbon copy of the form.
 
 
 4
 On the form, there was a section to be completed by an Institutional Disciplinary Board after a hearing. According to the Administrative Policies and Procedures (APP)[1] of the Tennessee Department of Corrections, when a Warden requests IAS for an inmate, the Board must determine whether the Warden "has a substantial (even if subjective) reason(s) to believe that the inmate's continued presence in the general population presents a risk to the well-being of that inmate, to other inmates or employees, and or to the security of the institution...." APP Index # 404.10, Paragraph VI.C.1.b. (7). Williams apparently had given Carroll a copy of the form before the Board could complete its section. Carroll was then taken to IAS.
 
 
 5
 Carroll was not informed that there was to be an IAS hearing, that an IAS hearing had taken place, or what the result of that hearing was. An Institutional Disciplinary Board, consisting of Corporal John Spiller, Martha Crain, and Lynda Akins[2] (the Board) reviewed Carroll's charge and Davis's recommendation on July 16, 1985. The Board upheld Davis's recommendation, and Carroll remained in IAS. Carroll was not provided with notice of the hearing 24 hours in advance, in violation of due process and the APP. Wolff v. McDonald, 418 U.S. 539, 564 (1974); APP Index # 404.10, Paragraph VI.C.1.b. (2). Because he was not notified of the hearing, he did not have an opportunity to be present and introduce evidence, also in violation of due process and the APP. Wolff v. McDonald, 418 U.S. 539, 566 (1974) (an inmate "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals"); APP Index # 404.10, Paragraph VI.C.1.b. (5).
 
 
 6
 During this time, Tony Bowers of the Tennessee Bureau of Investigation and Corporal Charles Cubine of Fort Pillow State Farm Internal Affairs were investigating causes of the riot. Their investigation resulted in some indictments; Carroll was not indicted.
 
 
 7
 On or about July 25, 1985, Carroll was transferred from Fort Pillow to Brushy Mountain Penitentiary, in Petros, Tennessee. While at Brushy Mountain, he has received periodic reviews of his IAS status; none of these reviews has resulted in his release from IAS.
 
 
 8
 On August 6, 1986, Carroll filed a pro se complaint against Davis, Cubine, and Bowers in the United States District Court for the Western District of Tennessee alleging, among other things, that his right to due process was violated by the state's failure to provide him with an IAS hearing. He amended his complaint on August 26, 1986 requesting return to Fort Pillow; return to his job at the laundry; back-pay for the period of lock-up; return of incentive time and credits for the past year; removal of the reference from his records; and any and all damages the court deemed proper.
 
 
 9
 On April 1, 1987, the defendants sent Carroll a "Motion To Dismiss And/Or For Summary Judgment." Attached to this motion as an exhibit was a copy of the charge form with the names of the Board members and their decision filled in. Carroll contends that this is the first time he saw the complete form or knew the existence of the Board or its members.[3] The defendants moved for, inter alia, summary judgment on the issue of whether Carroll received adequate due process. The record does not indicate what day Carroll received this motion. Carroll filed a response on May 4, 1987.
 
 
 10
 The magistrate filed a report and recommendation on July 8, 1987 which, inter alia, denied the motion for summary judgment on the question of due process. The defendants objected to the report in part on August 20, 1987, and submitted an answer to Carroll's amended complaint on September 21, 1987.
 
 
 11
 An evidentiary hearing was held on November 18, 1987. The magistrate filed his Proposed Findings of Fact and Recommended Conclusions of Law on February 1, 1988; he found that Carroll had been denied a hearing comporting with APP guidelines and federal constitutional due process and recommended that another hearing be held and that the charges against Davis, Cubine, and Bowers be dismissed for lack of personal involvement in the hearing process. Carroll filed timely objections.
 
 
 12
 On April 22, 1988, Carroll filed an amended complaint joining both the Board members and members of the Institutional Reclassification Board (responsible for transferring him from Fort Pillow to Brushy Mountain) as defendants. On July 12, 1988, the district court dismissed Carroll's claim for back pay; it denied Carroll's request for a transfer from Brushy Mountain to Fort Pillow; and it dismissed his claim for compensatory and punitive damages against Davis, Cubine, and Bowers. It also denied Carroll leave to amend to join members of the Board and the Institutional Reclassification Board as defendants; the court claimed that both of these claims were barred by Tennessee's one year statute of limitations. Wilson v. Garcia, 105 S.Ct. 1938 (1985); Tenn.Code Ann. Sec. 28-3-104.
 
 
 13
 On August 29, 1988, an IAS hearing was held pursuant to the court's order of July 12, 1988. At this hearing it was recommended that Carroll remain in IAS. Carroll appealed to this court on January 18, 1989.
 
 II
 
 14
 Carroll contends that Davis, Cubine, and Bowers should be held liable in money damages for denial of his due process rights. The magistrate made a factual finding that "[n]o evidence was submitted to show that defendants Herman C. Davis, Charles Cubine, or Tony Bowers had any part in the failure to give plaintiff a hearing, on or about July 16, 1985." (JA at 125). Thus, "no genuine issue of material fact remains on the question of liability of these defendants for compensatory and punitive damages." Ibid. The district court adopted the magistrate's order in its entirety. Based on this factual finding, the district court ruled that, as a matter of law, these defendants were entitled to summary judgment; since none of them were involved in the initial IAS hearing itself, none of them could be held liable for any violations of the APP or the United States Constitution that may have occurred at that hearing.
 
 
 15
 The factual findings of the district court should not be disturbed unless "clearly erroneous," under Fed.R.Civ.P. 52(a). A finding is "clearly erroneous" only if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985). We are not left with this conviction. Carroll presented no evidence to indicate that Davis, Cubine, or Bowers were involved in the hearing itself. Bowers and Cubine both testified that they were not involved in IAS hearings. We therefore affirm the district court's grant of the defendants' motion for summary judgment.
 
 III
 
 16
 On April 22, 1988, Carroll filed an amended complaint to join members of the Board and the Institutional Reclassification Board.[4] The district court granted summary judgment to the members of the Board and the Institutional Reclassification Board on the ground that Carroll's amended complaint was filed outside of the one year period allowed by the statute of limitations. Wilson v. Garcia, 105 S.Ct. 1938 (1985); Tenn.Code Ann. Sec. 28-3-104.
 
 
 17
 Carroll contends, however, that he did not know that there had been an IAS hearing before the Board until sometime in April 1987, when he received a copy of the fully completed form attached to the Defendants' Motion to Dismiss And/Or For Summary Judgment. He thus could not have amended his complaint within one year of July 16, 1985. The magistrate states that the form was incomplete when given to Carroll: "... it is obvious that the form was initiated by Warden Davis, a copy was given to plaintiff, and thereafter the Board took its action and signed off thereon." (JA at 123 n. 5) (emphasis in the original). The magistrate's report was adopted by the district court.
 
 
 18
 Thus, there appears to be substance to Carroll's allegation that he was not informed of either the identity of the Board members or the nature of their action before receiving the motion from the defendants in April 1987. Under these circumstances, the statute would commence to run from the date of his receipt of this document. Sevier v. Turner, 742 F.2d 262 (6th Cir.1984) (in a section 1983 damages action, "[t]he statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action"). Thus, it may be that Carroll's amended complaint was timely filed. Even accepting Carroll's allegation as true, however, the members of the Board are entitled to summary judgment as a matter of law. Thus, we affirm the district court's refusal to allow Carroll to amend his complaint.
 
 
 19
 It is clear that under the APP the Board bears no duty to inform an inmate of either the charge against him or the time and date of the hearing when the warden initially recommends placement in IAS, as in the present case. The APP requires that the "inmate ... be verbally advised by the board of its actions [to recommend placement in IAS]" when the board initiates a request for IAS. APP Index # 404.10, Paragraph VI.C.1.c. (1). The APP mentions no such requirement for the Board when the warden requests placement of an inmate in IAS. Id. at Paragraph VI.C.1.b. In this instance, the Board was not responsible for informing Carroll of either the specifics of the charge or the time or date of the hearing since Davis initiated the request for IAS. Thus, the Board cannot be held liable in money damages for this failure to inform Carroll. See Slay v. State of Alabama, 636 F.2d 1045, 1046 (5th Cir. Unit B 1981).
 
 
 20
 Carroll also contends that his amendment of April 22, 1988 was under Rule 15(b) and (c) of the Federal Rules of Civil Procedure, and thus "relates back" to the original complaint which was filed before the statute of limitations had run. Because the members of the Board he sought to join are not liable in money damages, we need not address the merits of this argument.
 
 IV
 
 21
 Carroll contends on appeal that the length of his 3 1/2 year IAS at Brushy Mountain constitutes cruel and unusual punishment in violation of the eighth amendment. He did not raise this issue in the district court. We will generally not review an issue not raised in the district court unless such review is necessary to prevent manifest injustice or promote procedural efficiency. See United States v. Baker, 807 F.2d 1315, 1321 (6th Cir.1987) (citation omitted). We may also review a claim first raised on appeal "where the proper resolution is beyond any doubt" Ibid. (citation omitted). We find these conditions lacking in this case, and thus will not accept jurisdiction to hear this issue.
 
 
 22
 Lacking any allegation of inhumane conditions in IAS at Brushy Mountain, Carroll presents no claim which, if unreviewed, would present "manifest injustice" or which may be resolved by this court "beyond any doubt" in light of these holdings. Administrative segregation does not clearly violate the eighth amendment. Indeed, a number of federal appeals courts have upheld the constitutionality of IAS against eighth amendment attacks. See Bono v. Saxbe, 620 F.2d 609 (7th Cir.1980), and cases cited therein.
 
 
 23
 This claim is not so closely related to the present action to justify this court accepting jurisdiction to promote procedural efficiency. Neither party has briefed the issues involved in an eighth amendment claim; no facts dispositive to an eighth amendment claim, except for the fact that his IAS status is reviewed periodically, are on the record.
 
 
 24
 Carroll cites Rhodes v. Chapman, 452 U.S. 337 (1982), in support of his eighth amendment violation claim. His reliance is misplaced. Chapman concerns the conditions of incarceration as constituting an eighth amendment violation, not the length, as Carroll's claim must be read to allege.
 
 
 25
 We therefore AFFIRM the judgment of the district court.
 
 
 26
 RALPH B. GUY, Jr., Circuit Judge, concurring.
 
 
 27
 I agree completely with the court's resolution of this case, but I would also dismiss any claims for monetary relief as a result of the Supreme Court's recent decision in Will v. Michigan Dept. of Corrections, 491 U.S. ---, 109 S.Ct. 2304 (1989). After Will, state officials acting in their official capacities, as were the defendants here, are no longer proper defendants in section 1983 actions.
 
 
 
 [1]
 The APP was amended effective September 26, 1986. The references in this opinion are to the APP in force at the time of the hearing
 
 
 [2]
 At the time of the hearing, Ms. Akins's surname was Daniels
 
 
 [3]
 Carroll alleges, also, that he found this document through a Freedom of Information Act request prior to the district court's November 18, 1987 evidentiary hearing
 
 
 [4]
 Carroll has no liberty interest in confinement in Fort Pillow State Farm rather than Brushy Mountain Penitentiary. See Meachum v. Fano, 427 U.S. 215 (1976). Accordingly, the Institutional Reclassification Board could not have violated Carroll's right to due process even if, in fact, it transferred Carroll without a hearing