879 F.2d 863
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Billy FLANERY, Jr., Defendant-Appellant,
 No. 88-5605.
 United States Court of Appeals, Fourth Circuit.
 Argued: Jan. 13, 1989.
Decided: July 13, 1989.
 
 Charles Randall Lowe (Yeary, Tate and Lowe, P.C., on brief), for appellant.
 Jerry Walter Kilgore, Assistant United States Attorney (John P. Alderman, United States Attorney, on brief), for appellee.
 Before DONALD RUSSELL and WILKINS, Circuit Judges, and J. FREDERICK MOTZ, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Billy Flanery, Jr. appeals the district court's judgment of conviction and order of sentence following a trial by jury where he was found guilty of various charges stemming from his involvement in a bank robbery. For the reasons discussed below, we affirm the district court's judgment and order.
 
 I.
 
 2
 In July 1987, the appellant and Lavonda Brown[1] drove from Detroit, Michigan to West Virginia, where the appellant purchased two guns at a flea market. After a brief trip back to Michigan, the two drove to Pennington Gap, Virginia. On August 6, 1987, Flanery and Brown drove to nearby St. Charles, Virginia, where Flanery identified to Brown the Lee Bank and Trust Company of St. Charles as the bank he was planning to rob. On August 7, after some target practice with the gun Flanery was to use in the bank robbery, Flanery and Brown drove to the Lee Bank and Trust. At Flanery's request, Brown telephoned the Lee County Sheriff's Department and described a fictitious shooting in another part of the county. Then, the two went inside the bank. While Brown acted as lookout, Flanery brandished a gun at the tellers and robbed the bank of $9,160.
 
 
 3
 After the robbery, Flanery and Brown drove to an acquaintance's house where Flanery bought two more guns. Law enforcement officials arrested Flanery and Brown later that day as they were driving to Kentucky. Officers removed a .22 derringer from Flanery's pocket. After Flanery signed a consent form permitting the officers to search the car, the officers removed three guns from the car: a .38 Webley (identified as the gun used during the bank robbery), a .32 Colt Police Special, and a .22 Magnum.
 
 
 4
 On August 11, 1987 Flanery appeared before a United States Magistrate, who entered a detention order pursuant to 18 U.S.C. Sec. 3142 with the express understanding of counsel that Flanery would have access to medical, psychological, or psychiatric treatment as a pre-trial detainee. The government moved for a determination of Flanery's mental competence to stand trial pursuant to 18 U.S.C. Sec. 4241, and on August 13 the district court ordered Flanery committed to the custody of the United States Attorney General and transported to the Federal Correctional Institute in Butner, North Carolina ("Butner") for psychological and psychiatric examinations. Although this order committed Flanery to Butner for 30 days, the district court granted Butner's request for a 15-day extension in which to complete its evaluation of Flanery.
 
 
 5
 On October 15, 1987 the district court, after a hearing, concluded that Flanery "suffer[ed] from a mental defect which would prevent him from assisting properly in his defense." Accordingly, the district court ordered that Flanery "be remanded back to the custody of the Attorney General for further treatment [at Butner] under 18 U.S.C. Sec. 4241(d)[2] to determine within a reasonable period of time whether defendant will attain the capacity to permit the trial to proceed."
 
 
 6
 On January 25, 1988 Flanery's counsel wrote to Butner authorities and the government, reminding them that the terms of 18 U.S.C. Sec. 4241(d) limited Flanery to a four-month stay in Butner for evaluation, namely October 15, 1987 to February 15, 1988. On February 9, 1988, Butner's Chief of Psychology Services, Dr. James Hilkey, acting with a psychiatrist and a medical doctor, concluded that Flanery was competent to stand trial. This report was forwarded to the district court on February 23, 1988 and was filed with the clerk of the district court on March 1, 1988.
 
 
 7
 On March 14, 1988, the district court heard oral argument on Flanery's motion to dismiss the charges due to the alleged untimeliness of the competency report. The defendant argued that the Government had not applied for an extension under Section 4241(d) and that the district court had not made a finding prior to March 1 regarding the defendant's competency. The district court, however, held that the competency report was completed within the four month period mandated by 18 U.S.C. Sec. 4241(d), denied Flanery's motion to dismiss, and appointed a psychiatrist to determine Flanery's competency at the time of the robbery.
 
 
 8
 At the competency hearing preceding the trial, Flanery's counsel renewed his objection to the Butner report, claiming it was not timely filed. Counsel argued that because Flanery was hospitalized longer than four months, Butner had no right to examine him and offer an opinion past that four month period. Consequently, the opinion attesting to Flanery's competency was late and ought not to have been heard by the court. Thus, the only report the court had before it stated that defendant was incompetent. The court overruled the motion, and the case proceeded to trial before a jury on May 2 and 3, 1988.
 
 
 9
 At trial, the central issue was whether Flanery had been mentally competent at the time of the robbery. Both parties presented expert testimony. At the end of trial, defendant's motion for acquittal on all counts of the indictment was denied. The jury returned a verdict of guilty on all counts of the indictment; at sentencing, however, the district court found that the indictment overlapped and acquitted the defendant on four counts. The court sentenced defendant to concurrent sentences of 25 years in prison for bank robbery with a dangerous weapon and to five years for transporting firearms in interstate commerce. Subsequently, the district court denied the defendant's motion for reduction of sentence and for correction of sentence. Flanery appealed, claiming ten errors. We deal with each of these in turn.
 
 II.
 
 10
 On appeal, Flanery first argues that the district court lost its jurisdiction to try him on the charges in the indictment because he was held at Butner beyond the four-month time period permitted by Section 4241(d)(1). The appellant argues that he was sent to Butner on October 15, 1987, and his four-month term of treatment expired on February 15, 1988. The Butner psychiatrist completed his evaluation on February 9, 1988, but the report was not sent to the district court until February 23, 1988, and was not filed with the clerk of court until March 1, 1988. Thus, because the court did not grant an extension of time for treatment, and because the court did not find within the four-month period that the defendant was competent to stand trial, the court lacked jurisdiction over the defendant after February 15, 1988.
 
 
 11
 The question in this case, then, becomes whether the four-month period of federal custody necessitates just an evaluation within that time, or an evaluation as well as the filing of the proper papers and determination by the court of competency. The appellant relies on United States v. Baker, 807 F.2d 1315 (6th Cir.1986), which stated that Section 4241(d) "requires that a determination as to the individual's mental condition be made within four months, and that the individual cannot be held pursuant to Section 4241 in excess of four months unless the court finds that the individual is likely to attain competency within a reasonable time." Id. at 1320. The appellant also relies on United States v. Charters, 829 F.2d 479 (4th Cir.1987), vacated, 863 F.2d 302 (4th Cir.1988), wherein a panel of this court noted that Section 4241(d) "permits federal custody and treatment of the individual for four months, a period of time, ... which Congress deemed adequate to determine the probability that the individual would regain competence in the foreseeable future." 829 F.2d at 485.
 
 
 12
 We believe that appellant's reliance on Baker and Charters is misplaced. In Baker, the court clearly stated that "a determination as to the individual's mental condition [must] be made within four months." 807 F.2d at 1320 (emphasis added). In the present case, the appellant was determined to be mentally competent on February 9, 1988, six days before the four-month evaluation period expired. And in Charters, this court merely observed that Section 4241(d) "permits federal custody and treatment of the individual for four months," instead of the three-year period for which the defendant in that case was confined. 829 F.2d at 485. In fact, Charters states that the four-month period was the amount of time "Congress deemed adequate to determine the probability that the individual would regain competence in the foreseeable future." Id. In the present case, the determination of the appellant's competency occurred within the prescribed time. Neither Baker nor Charters states that the evaluation must not only occur but be forwarded to the district court within the four-month period mandated by Section 4241(d).
 
 
 13
 The legislative history of Section 4241(d) also indicates that only the determination of competency must occur within the four-month period. "In accord with the Supreme Court's holding in Jackson v. Indiana [406 U.S. 715 (1972) ], commitment under Section 4241 may only be for a reasonable period of time necessary to determine if there exists a substantial probability that the person will attain the capacity to permit the trial to go forward in the foreseeable future. Under Section 4241(d)(1), the period may not exceed four months, however." S.Rep. No. 225, 98th Cong., 2d Sess., reprinted in 1984 U.S.Code Cong. & Ad.News, 3182, 3418. Again, this language suggests that the four-month period is for determination of the defendant's condition and does not include the time needed to file the evaluation with the court.
 
 
 14
 We hold, therefore, that the statute intends that only the evaluation be completed within the four-month time period. The language of Section 4241(d)(1) states that the four-month period of hospitalization is for the determination of the defendant's competency; the language says nothing about appropriate notification to the court. It is improbable that Congress meant to include in the four-month period the time needed to notify the court; if that indeed were the case, then the four-month evaluation period would by necessity be shortened to take into account the time needed to mail the reports to the court and have them filed. Thus, as long as the facility makes an evaluation of a defendant within the required time, the defendant may be held past the four-month period and the district court will retain jurisdiction. Of course, we recognize that if the four-month period means only that time in which the evaluation must occur, it would be possible that defendants could be held far past the confinement period while they waited for facility administrators to file their reports with the court. That, however, would suggest a lack of good faith on the part of these officials, and there is nothing to suggest a lack of good faith by Butner officials in the present case.
 
 
 15
 In sum, the statute provides only that the examination must occur within four months. To read into the statute that the four-month period also must include time for filing the report with the court would subject the entire institutionalization-for-evaluation process to the whims of both the Post Office and various administrative employees. That result clearly was not intended by the statute. We hold that the defendant in this case was properly detained under Section 4241(d) and that the district court had jurisdiction over the defendant at all times.
 
 III.
 
 16
 Further, the appellant contends that the police engaged in an unlawful search of the car pursuant to his arrest and that the district court erred in refusing to suppress this evidence. At the time appellant was arrested, the police took one gun from the defendant's pocket. Appellant's other three guns were discovered during a search of the car after he had consented to the search. On appeal, Flanery argues that he was mentally incompetent to consent to the search, and offers as proof the fact that he was committed to the custody of the Attorney General for the purpose of a psychiatric examination abut one week after his arrest. The appellant, however, cites no authority for the proposition that such incompetency renders consent to the search invalid.
 
 
 17
 There is no suggestion in the record that the appellant was subjected to duress or coercion. "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). We note that at the scene of his arrest, the appellant consented to the search of his car and signed the proffered consent form and that when appellant was advised of his rights, he said, "I understand my rights. I know my rights." In addition, Butner's Dr. Hilkey also testified that Flanery was capable of consenting to the car search. Based on this evidence, the trial court did not err in holding that the appellant voluntarily consented to the car search. In sum, the firearms were discovered during a valid search of appellant's vehicle, and the trial court did not err in admitting the firearms as evidence at trial.
 
 IV.
 
 18
 The appellant also contends that he was unfairly prejudiced at trial because the trial court allowed "a laundry list" of criminal charges pertaining to the six count indictment to go before the jury. The appellant argues that five of the counts of the indictment were multiplicious because all of the offenses listed arose out of or were directly related to the bank robbery. Flanery specifically argues that he should not have been charged under both Counts Two and Four, and that he should not have been charged under both counts Four and Five. The indictment, however, merely included all the charges which the facts could support. Count Two charged Flanery with taking money from a bank by force, violence, and intimidation in violation of 18 U.S.C. Sec. 2113(a); Count Four charged Flanery with using a dangerous weapon during the bank robbery in violation of 18 U.S.C. Sec. 2113(d); Count Five charged Flanery with using and carrying a firearm during a bank robbery in violation of 18 U.S.C. Sec. 924(c)(1). The jury convicted Flanery of violations of Sections 2113(a), 2113(d) and 924(c)(1). At worst, the trial court's decision to let all counts of the indictment go to the jury is harmless error because it later properly acquitted Flanery of violations of Sections 2113(a) and 924(c)(1). See McLean v. United States, 449 F.Supp. 1036, 1040 (E.D.N.C.1978) (In a single bank robbery, a defendant may be convicted of violating (a), (b), and (d) of Section 2113, but the trial court must vacate the duplicitous sentences for the lesser offenses under (a) and (b)); see also Simpson v. United States, 435 U.S. 6, 16 (1978) (In a single bank robbery, a defendant cannot be sentenced under both Sections 2113(d) and 924(c)). We hold that the trial court properly permitted all six counts of the indictment to go before the jury.
 
 V.
 
 19
 Further, the appellant contends that the district court erred by imposing an improper sentence and wrongly refusing the motion for reduction of sentence. The appellant was convicted under 18 U.S.C. Sec. 2113(d), which carries a maximum term of twenty-five years in prison, as well as under 18 U.S.C. Sec. 924(b), which carries a maximum term of ten years in prison. Flanery was sentenced to thirty years in prison; the sentence therefore is within the statutory limits and as such is not subject to review unless it is founded upon misinformation of "constitutional magnitude." United States v. Bernard, 757 F.2d 1439, 1444 (4th Cir.1985), quoting United States v. Tucker, 404 U.S. 443, 447 (1972). We hold that the trial court correctly sentenced Flanery to thirty years in prison. We also hold that the trial court did not abuse its discretion in denying the Fed.R.Crim.P. 35(b) motion for reduction of sentence. See United States v. Lauga, 762 F.2d 1288, 1291 (5th Cir.), cert denied, 474 U.S. 860 (1985).
 
 VI.
 
 20
 Appellant also asserts that the district court erred in admitting the testimony of the government psychiatrist Jr. James Hilkey. Appellant contends that because Dr. Hilkey was retained to determine appellant's competency to stand trial, he could not offer an opinion as to appellant's competency at the time of the offense without first submitting a written evaluation of appellant's competency at the time of the offense. We find this argument to be meritless. As the Fifth Circuit has noted, "although the issues of sanity at the time of the offense and competency to stand trial are indeed different, it does not follow 'that a psychiatrist investigating the competency of an accused to stand trial can never be qualified to express an opinion as to his sanity a few months earlier.' " United States v. McCracken, 488 F.2d 406, 411 n. 3 (5th Cir.1974), citing Birdsell v. United States, 346 F.2d 775, 780 (5th Cir.), cert. denied, 382 U.S. 963 (1965). We hold that the trial court properly admitted Dr. Hilkey's testimony.
 
 VII.
 
 21
 Flanery's remaining assignments of error are meritless. First, the district court did not err in admitting the bank teller's testimony regarding her fear during the robbery; Sections 2113(a) and (d) require the government to prove that Flanery committed the bank robbery by force, violence, or by jeopardizing the life of any person. Second, the district court did not err in questioning a defense witness in order to clarify certain testimony; indeed, the district court, to insure that the jury is not needlessly confused by testimony, may question a witness to dispel ambiguity in testimony. See United States v. Pisani, 773 F.2d 397, 403 (2d Cir.1985). Third, the district court's decision to permit the government to close the case was correct. In raising an insanity defense under 18 U.S.C. Sec. 17, the defendant must prove his defense of insanity by clear and convincing evidence. The government, however, in proving a criminal case, must establish every element of the crime beyond a reasonable doubt. Smart v. Leeke, No. 87-7737 (4th Cir. May 4, 1989), citing In re Winship, 397 U.S. 358, 361-62 (1972). The district court was correct in allowing the government, because it had the higher burden of proof, to close the case.
 
 
 22
 The appellant also claims that the trial court erred when it denied his motion for acquittal at the end of the trial. The trial court denied the motion and permitted all six counts of the indictment to go to the jury, which found Flanery guilty on all six counts. Afterwards, the court issued a judgment of acquittal for Counts One, Two, Five, and Seven, and entered the convictions on Counts Four and Six. On appeal, Flanery contends that he should be acquitted on these counts as well. In this circuit, "[t]he test for deciding a motion for a judgment of acquittal is whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir.1982). We hold that the evidence presented at trial was sufficient to convict Flanery on Counts Four and Six, and that the district court did not err in denying the motion for acquittal.
 
 
 23
 We also hold that the district court did not err in refusing to give the defendant's jury instruction defining the term "wrongfulness" as moral wrongfulness rather than criminal wrongfulness. The statute merely states that "[i]t is an affirmative defense to a prosecution" if "the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C.A. Sec. 17(a) (West Supp.1989). At trial, Flanery presented testimony by his sister and by a psychiatrist that he had been hearing voices that told him to rob a bank and use the money to build a temple. Flanery's defense psychiatrist, however, also stated that Flanery bought the guns for target practice and obtained them because he wanted them as a hobby, not because the voices told him to buy them.
 
 
 24
 We note that the Eighth Circuit recognizes "that a defendant's delusional belief that his criminal conduct is morally justified may establish an insanity defense under federal law, even where the defendant knows that the conduct is illegal." United States v. Dubray, 854 F.2d 1099, 1101 (8th Cir.1988). See also United States v. Seqna, 555 F.2d 226, 232-33 (9th Cir.1977). We are, however, unwilling to adopt this rule under the facts of this case. A review of the record indicates that there was no evidence of defendant's moral justification of the bank robbery--merely evidence that voices compelled Flanery to rob the bank. As the Dubray court stated, "[t]he jury should be instructed on the distinction between moral and legal wrongfulness, however, only where evidence at trial suggests that this is a meaningful distinction in the circumstances of the case." Dubray, 854 F.2d at 1101, citing United States v. Minq Sen Shuie, 650 F.2d 919, 922 n. 7 (8th Cir.1981) and Seqna, 555 F.2d at 233. We hold that the trial court did not err in refusing Flanery's proffered jury instruction regarding moral wrongfulness.
 
 VIII.
 
 25
 Accordingly, the judgment of conviction is affirmed.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 Lavonda Brown pled guilty to charges stemming from her involvement in the bank robbery. She served seven months in jail and was released on probation. Brown testified for the government at appellant's trial
 
 
 [2]
 18 U.S.C. Sec. 4241(d) provides in pertinent part:
 (d) Determination and disposition.--If, after the [competency] hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility--
 (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed; and
 (2) for an additional reasonable period of time until--
 (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed; or
 (B) the pending charges against him are disposed of according to law;
 whichever is earlier.... (Emphasis added).